FILED IN
COURT OF CRIMINAL APPEALS

March 26, 2015

ABEL ACOSTA, CLERK

PD-1406-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 3/26/2015 2:59:29 PM
Accepted 3/26/2015 3:15:22 PM
ABEL ACOSTA
CLERK

# IN THE TEXAS COURT OF CRIMINAL APPEALS

| | | |
|---|---|---|
| JOSE RAMIRO DELAROSA, <br> *APPELLANT* | § <br> § <br> § | CCA No. PD-1406–14 |
| V. | § <br> § | COA No. 05-14-01020-CR |
| THE STATE OF TEXAS, <br> *APPELLEE* | § <br> § <br> § | TC No. F14–52888-T |

*APPEALED FROM CAUSE NUMBER F14-52888-T IN THE 283RD JUDICIAL DISTRICT COURT OF DALLAS COUNTY, TEXAS; THE HONORABLE RICK MAGNIS, JUDGE PRESIDING; APPEAL DISMISSED FOR LACK OF JURISDICTION BY THE HONORABLE FIFTH COURT OF APPEALS IN CAUSE NUMBER 05-14-01020-CR.*

§ § §

# STATE'S REPLY BRIEF ON THE MERITS ON STATE'S PETITION FOR DISCRETIONARY REVIEW

§ § §

SUSAN HAWK
Criminal District Attorney
Dallas County, Texas


MICHAEL R. CASILLAS, Assistant
Criminal District Attorney,
Appellate Division
133 N. Riverfront Blvd., LB 19
Dallas, Texas 75207-4399
(214) 653-3600/FAX (214) 653-3643
State Bar No. 03967500
Michael.Casillas@dallascounty.org
Mcasillas@dallascounty.org

## Identity of Parties, Counsel, and Trial Court Below

Petitioner -- (Appellee Below):    The  State  of  Texas


Represented  by:

> The Honorable Susan Hawk, Criminal District Attorney
> Michael R. Casillas, Assistant Criminal District Attorney
>
> Office of the Criminal District Attorney of Dallas County
> 133 N. Riverfront Blvd., LB 19
> Dallas, Texas 75207-4399


Respondent – (Appellant Below):    Jose  Ramiro  Delarosa


Represented by:

> The  Honorable  Leslie  McFarlane
> 7522 Campbell Road,  Suite 113-216
> Dallas, Texas 75248


## Identification  of  Trial  Court  Below

The  283rd  Judicial  District  Court  of  Dallas  County,  Texas  –
The  Honorable  Judge  Rick  Magnis,  Presiding

## SUBJECT INDEX/TABLE OF CONTENTS

IDENTITY OF PARTIES, COUNSEL,
AND TRIAL COURT BELOW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

SUMMARY OF THE CASE/STATEMENT OF FACTS . . . . . . . . . . . . . . . . . 1

SUMMARY OF STATE'S REPLY ARGUMENTS . . . . . . . . . . . . . . . . . . . . 3

THE CERTAIN MATTERS IN DELAROSA'S
RESPONSE BRIEF TO BE ADDRESSED . . . . . . . . . . . . . . . . . . . . . . . . . . 6,11

*I. DELAROSA'S ARGUMENTS ARE BASED ON
MULTIPLE ASSUMPTIONS THAT ARE NOT
DEFINITIVELY PROVEN BY THE EXISTING
RECORD.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii,6

*II. WHILE THE FIFTH COURT'S USE OF THE
ABATEMENT PROCESS WOULD HAVE PERMITTED
THE ACCURACY OR INACCURACY OF A NUMBER
OF DELAROSA'S ASSUMPTIONS TO BE DETERMINED
LONG AGO, A CONCLUSION BY THIS COURT
MANDATING THE USE OF THE ABATEMENT
PROCESS WOULD PERMIT THE ACCURACY OR
INACCURACY OF ALL OF DELAROSA'S
ASSUMPTIONS TO BE DETERMINED.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii,7

*III. DELAROSA'S ATTEMPTS TO IGNORE MATTERS
RELATING TO THE TRIAL COURT'S "JUDGMENT" OF
DECEMBER 17, 2014 ARE THOROUGHLY UNDERSTANDABLE
IN LIGHT OF HOW THAT "JUDGMENT" AND THE PLEA
DOCUMENTS PERTAINING TO IT PROVIDE FURTHER
SUPPORT FOR THIS COURT TO MANDATE THAT THE
ABATEMENT PROCESS SHOULD BE USED TO HAVE
THE RECORD REFLECT THE TRUTH.* . . . . . . . . . . . . . . . . . . . . . . . iii,11

*IV.  DELAROSA'S ARGUMENTS CONTENDING THAT
THE RECORD  IS CLEAR REGARDING HOW THE TRIAL
COURT GRANTED DELAROSA A NEW TRIAL  – AND
HAD INTENDED TO DO SO  – HAVE RAISED ADDITIONAL
ISSUES PERTAINING TO THE NATURE OF DELAROSA'S
SOLE CLAIM AND WHAT AN ACTUAL RULING IN
DELAROSA'S FAVOR WOULD HAVE REQUIRED OF THE
TRIAL COURT.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv,11

*V.  IN LIGHT OF THE SUBSEQUENT ACTIONS OF THE
TRIAL COURT THAT ARE INCONSISTENT WITH WHAT
WOULD BE REQUIRED HAD THE TRIAL COURT RULED
IN DELAROSA'S FAVOR, THE SUBSEQUENT ACTIONS OF
THE TRIAL COURT PROVIDE MORE GROUNDS FOR A
CONCLUSION BY THIS COURT MANDATING USE OF THE
ABATEMENT PROCESS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv,11

CONCLUSION  AND  PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

CERTIFICATE/PROOF  OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

CERTIFICATE  OF  COMPLIANCE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

# INDEX OF AUTHORITIES

**CASES**                                                                           **PAGES**

Bogan v. State, 180 S.W. 247 (Tex. Crim. App. 1915) . . . . . . . . . . . . . . . . . . . . . 14

Ex Parte Seidel, 39 S.W.3d 221 (Tex. Crim. App. 2001) . . . . . . . . . . . . . . . . . 16n

Gonzales v. State, 689 S.W.2d 900 (Tex. Crim. App. 1985) . . . . . . . . . . . . . . . . 14

Schneider v. State, 594 S.W.2d 415 (Tex. Crim. App. [Panel Op.] 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

State v. Herndon, 215 S.W.2d 901(Tex. Crim. App. 2007) . . . . . . . . . . . . . . . . 15

State v. Morales, No. 05-12-01297-CR, 2013 Tex. App. LEXIS 13047 (Tex. App. – Dallas October 17, 2013, no pet.)(not designated for publication) . . . . . . . . . . . . . . . . . . . . . 16n

State v. Savage, 933 S.W.2d 497 (Tex. Crim. App. 1996) . . . . . . . . . . 14,15,16,16n

State v. Zalman, 400 S.W.3d 590 (Tex. Crim. App. 2013) . . . . . . . . . . . . . . . . . 14

Taylor v. State, 247 S.W.3d 223 (Tex. Crim. App. 2008) . . . . . . . . . . . . . . . . . . . 3

Taylor v. State, No. 05-06-01076-CR, 2008 Tex. App. LEXIS 6981 (Tex. App. – Dallas September 19, 2008, no pet.)(not designated for publication) . . . . . . . . . . . . . . . . . . . . . 7

## ARTICLES, RULES, CODES, AND CONSTITUTIONS

Tex. R. App. P. 4.1(a) ......................................... 2

Tex. R. App. P. 9.4(i)(1) ........................................ 20

Tex. R. App. P. 9.4(i)(2)(C) ...................................... 20

Tex. R. App. P. 38.3 ........................................... 2

Tex. R. App. P. 38.6(c) ........................................ 2

IN THE TEXAS COURT OF CRIMINAL APPEALS

| | | |
|---|---|---|
| JOSE RAMIRO DELAROSA, | § | CCA No. PD-1406–14 |
| *APPELLANT* | § | |
| | § | |
| V. | § | COA No. 05-14-01020-CR |
| | § | |
| THE STATE OF TEXAS, | § | |
| *APPELLEE* | § | TC No. F14-52888-T |

*APPEALED FROM CAUSE NUMBER F14-52888-T IN THE 283RD JUDICIAL DISTRICT COURT OF DALLAS COUNTY, TEXAS; THE HONORABLE RICK MAGNIS, JUDGE PRESIDING; APPEAL DISMISSED FOR LACK OF JURISDICTION BY THE HONORABLE FIFTH COURT OF APPEALS IN CAUSE NUMBER 05-14-01020-CR.*

TO THE HONORABLE TEXAS COURT OF CRIMINAL APPEALS:

The instant State's Reply Brief is submitted to this Court on behalf of Susan Hawk, the Criminal District Attorney of Dallas County, Texas, in regard to the State's Petition For Discretionary Review which this Court previously granted.

## SUMMARY OF THE CASE/STATEMENT OF FACTS

Based on the content of the State's Opening Merit Brief, this Court is well aware of the historical facts and procedural posture of this case.[1]  Accordingly, the State will not repeat those matters in the instant State's Reply Brief, but instead directs this Court to the discussion of those matters that is contained in the State's Opening Merit Brief.

---

[1]*See* State's Opening Merit Brief, at pp. 3-8.

1

Delarosa's Response Brief was accepted by this Court on March 17, 2015. Based on the claims in Delarosa's Response Brief, this Court is well aware of Delarosa's responses to the contentions contained in the State's Opening Merit Brief.[2] The State wishes, however, to address certain matters raised in Delarosa's Response Brief.

As per the literal text of the applicable rule of appellate procedure, the State files the instant State's Reply Brief in an effort to address certain matters in Delarosa's Response Brief. *See* Tex. R. App. P. 38.3. According to Tex. R. App. P. 38.6(c), an appellant must file any reply brief within twenty (20) days of the filing of the appellee's brief. As noted above, Delarosa's Response Brief was accepted by this Court on March 17, 2015. As calculated in accordance with the applicable rule of appellate procedure, the twentieth (20th) day after March 17, 2015 would be April 6, 2015. *See* Tex. R. App. P. 4.1(a). As per the language of the relevant rules of the Texas Rules of Appellate Procedure, the instant State's Reply Brief is timely so long as it is filed no later than Monday, April 6, 2015. *See* Tex. R. App. P. 4.1(a); Tex. R. App. P. 38.6(c).

---

[2]*See* Delarosa's Response Brief, at pp. 1-15.

## SUMMARY OF STATE'S REPLY ARGUMENTS

*Delarosa's arguments proceed from multiple assumptions that are in no way conclusively proven by the existing record. Delarosa assumes that the interlineation (that does not encircle the "(granted)" option on the order portion of the motion for new trial) was intended to indicate that the trial court had granted the motion for new trial. Delarosa also assumes that the trial court signed the order portion of the motion for new trial on the same day that the motion for new trial was faxed to the court and file-stamped, August 6, 2014. Delarosa further assumes that the record contains no inaccuracies. Finally, Delarosa assumes that the notation "Motion for new trial granted per Judge Rick Magnis" in the "judgment" of December 17, 2014 refers to the order portion of the motion for new trial that Delarosa assumes granted Delarosa a new trial.*

*While the record does not definitively demonstrate that any of Delarosa's assumptions are correct, the accuracy or inaccuracy of Delarosa's first three assumptions could have been determined long ago had the Fifth Court simply made use of the abatement process as per Taylor v. State, 247 S.W.3d 223 (Tex. Crim. App. 2008). Furthermore, should this Court determine that the "judgment" of December 17, 2014 was void ab initio (because this Court had exclusive jurisdiction over the case by virtue of the pendency of the State's timely-filed petition for*

3

*discretionary review) and that the abatement process should be used for the trial court to clarify whether it intended to grant a new trial or for an appeal to proceed, the trial court can also clarify the at-least-somewhat cryptic nature of the notation in the "judgment" of December 17, 2014 that reads "Motion for new trial granted per Judge Rick Magnis."*

*Delarosa's attempts to ignore matters relating to the irregularities that led to the "judgment" of December 17, 2014 are thoroughly understandable in light of how those irregularities provide more support for the State's position herein. Moreover, since that "judgment" of December 17, 2014 – on its face – was rendered at a time when only this Court had jurisdiction over the case (by virtue of the State's having timely filed its petition for discretionary review) and since the plea papers related to the "judgment" of December 17, 2014 contain discrepancies regarding when the parties signed the documents and when the trial court signed them, the "judgment" of December 17, 2014 supports this Court's mandating that the abatement process be used to make certain that the appellate record reflects the truth of what occurred during the proceedings below and when those occurrences transpired.*

*In addition to the aforementioned matters, Delarosa's arguments that the record is clear that the motion for new trial was actually granted raise the issues of the content of the motion for new trial and – assuming the trial court did mean to*

*grant Delarosa a new trial – the only action that the trial court could subsequently take properly as a matter of law. In regard to these latter issues, this Court's binding precedents make clear that the motion for new trial made one claim only, a claim of insufficiency of the evidence. According to this Court's other binding precedent, the trial court had to enter a judgment of acquittal, which the trial court did not do. As such, the nature of Delarosa's claims and the trial court's subsequent conduct actually support the conclusion that the trial court did not originally intend to grant the motion for new trial. In the alternative, the trial court's conduct as a whole provides only additional support for the conclusion that this Court should order that resort to the abatement process is required.*

*For all the aforementioned reasons and the reasons stated in the State's Opening Merit Brief and the State's Jurisdictional Brief, the State respectfully reiterates that the Fifth Court still erred by failing to make use of the abatement process based on the conclusion that it did not have jurisdiction and that only this Court had jurisdiction once the State's petition for discretionary review was filed in a timely fashion.*

## THE CERTAIN MATTERS IN DELAROSA'S
## RESPONSE BRIEF TO BE ADDRESSED

*I. DELAROSA'S ARGUMENTS ARE BASED ON MULTIPLE ASSUMPTIONS THAT ARE NOT DEFINITIVELY PROVEN BY THE EXISTING RECORD.*

*II. WHILE THE FIFTH COURT'S USE OF THE ABATEMENT PROCESS WOULD HAVE PERMITTED THE ACCURACY OR INACCURACY OF A NUMBER OF DELAROSA'S ASSUMPTIONS TO BE DETERMINED LONG AGO, A CONCLUSION BY THIS COURT MANDATING THE USE OF THE ABATEMENT PROCESS WOULD PERMIT THE ACCURACY OF INACCURACY OF ALL OF DELAROSA'S ASSUMPTIONS TO BE DETERMINED.*

Delarosa's Response Brief expressly states, "The Court of Appeals properly dismissed this appeal for lack of jurisdiction due to the unambiguous granting of the motion for new trial in this matter."[3] Delarosa's Response Brief also states that "the record does not contain inaccuracies."[4] Furthermore, Delarosa's Response Brief states that, "A Motion for New Trial was filed and granted on August 6, 2014."[5] Lastly, Delarosa's Response Brief asserts that when the "judgment" was entered on the date of December 17, 2014, "the fact that the trial court had earlier granted the motion for new trial was acknowledged in the notes of the judgment."[6]

---

[3] *See* Delarosa' Response Brief at p. 4.

[4] *See* Delarosa's Response Brief at p. 4.

[5] *See* Delarosa's Response Brief at p. 3.

[6] *See* Delarosa's Response Brief at p. 5.

6

Each of Delarosa's aforementioned contentions constitutes an assumption that is not conclusively or definitively proven by the existing record. While Delarosa contends that the record is "unambiguous" regarding how the trial court granted the motion for new trial, the State's Opening Merit Brief has already shown how it is unclear whether the trial court's interlineation on the order portion of the motion for new trial was intended to show that the trial court had granted the motion for new trial or had stricken through the "(granted)" option (which would indicate that the motion for new trial had been overruled).[7]

Additionally, the State's Opening Merit Brief noted how the trial court's docket sheet provided no guidance relative to the motion for new trial as it in no way reflected that any motion for new trial was even filed, much less that there was ever any ruling in regard thereto.[8] Furthermore, the State's Opening Merit Brief, citing the Fifth Court's own case of Taylor v. State, No. 05-06-01076-CR, 2008 Tex. App. LEXIS 6981 (Tex. App. – Dallas September 19, 2008, no pet.)(not designated for publication), noted how the jurisprudence of the Fifth Court had recognized that the existence of even an order that clearly seemed on its face to grant a new trial could actually be the

_____

[7]*See* State's Opening Merit Brief at pp. 4-5.

[8]*See* State's Opening Merit Brief at p. 5.

7

result of an inadvertent mistake by the trial court.[9]

Similarly, the combination motion for new trial and order bears a facsimile transmission date of August 6, 2014 and a file-stamp date of August 6, 2014. (CR: 64). The trial court's signature, however, bears no date whatsoever. (CR: 64). Accordingly, Delarosa's assertion that the motion was granted on August 6, 2014 is not definitively proven by the existing record, especially since the docket sheet fails to reflect anything regarding Delarosa's motion for new trial.

While it is possible that the trial court may have signed the order on August 6, 2014 and may have intended for the aforementioned interlineation to indicate that the motion for new trial was being granted (as Delarosa assumes), the face of the order itself fails to establish definitively either when the act of signing occurred and/or that the interlineation was intended to indicate that the motion for new trial had been granted. (CR: 64). Again, the docket sheet is of absolutely no help regarding these matters. Finally, if the trial court signed the order on August 6, 2014 and if that order was so obviously intended to indicate that Delarosa's motion for new trial was being granted, why did Delarosa wait until September 22, 2014 – a period of 47 days – to move for a dismissal of the appeal? Had Delarosa appreciated that the trial court's interlineation and signature clearly meant that the motion for new trial had been

---

[9]*See* State's Opening Merit Brief at p. 12.

8

granted, would not Delarosa have filed the motion to dismiss the appeal well before a period of 47 days had elapsed?

Since Delarosa's having waited 47 days to file a motion to dismiss the appeal is at least inconsistent with any immediate appreciation that the trial court had obviously and undoubtedly granted Delarosa a new trial, it is far from clear whether the appellate record is or is not accurate. However, the use of the abatement process would have clarified – many months ago – whether the matters discussed above were or were not inaccuracies in the appellate record.

Finally, Delarosa claims that the "judgment" of December 17, 2014 contains a notation that indicates that the trial court had granted the previous motion for new trial. However, a review of the face of the "judgment" of December 17, 2014 demonstrates that Delarosa has again assumed what a less-than clear matter actually means.

The "judgment" of December 17, 2014 appears in the supplemental Clerk's Record that was subsequently filed pursuant to this Court's order. (CR-S: 18-19). The second page of the "judgment" of December 17, 2014 contains a heading that reads, "Furthermore, the following special findings or orders apply:" (CR-S: 19). Beneath that heading appears the language, "Motion for new trial granted per Judge Rick Magnis." (CR-S: 19).

While Delorosa claims that this language indicates that the trial court previously

9

granted the motion for new trial, that is not what the language literally states. Delarosa's attempt to attribute to the language a meaning akin to "motion for new trial was previously granted" is thoroughly understandable in light of how an order on December 17, 2014 granting a motion for new trial would have been an outright nullity based on the July 2014 date that the original judgment had been entered.[10]  While the matter of the content of the "judgment" of December 17, 2014 would not have been clarified by any use of the abatement process that would have pre-dated the issuance of the "judgment" of December 17, 2014, there is no doubt that a conclusion by this Court that mandated  use of the abatement process would permit the resolution of the ambiguous nature of the language upon which Delarosa has relied.  Accordingly, the fact that Delarosa is compelled to rely on unproven assumptions amply demonstrates why this Court still should order the Fifth Court to make use of the abatement process to ensure that a clear record will exist showing not only what actually occurred in the trial court, but also when those occurrences actually transpired.

---

[10]The State's Opening Merit Brief discussed how any order granting a motion for new trial on December 17, 2014 would be of absolutely no force and effect relative to the judgment of July 9, 2014. *See* State's Opening Merit Brief at pp. 19-21.

*III. DELAROSA'S ATTEMPTS TO IGNORE MATTERS RELATING TO THE TRIAL COURT'S "JUDGMENT" OF DECEMBER 17, 2014 ARE THROUGHLY UNDERSTANDABLE IN LIGHT OF HOW THAT "JUDGMENT" AND THE PLEA DOCUMENTS PERTAINING TO IT PROVIDE FURTHER SUPPORT FOR THIS COURT TO MANDATE THAT THE ABATEMENT PROCESS SHOULD BE USED TO HAVE THE RECORD REFLECT THE TRUTH.*

*IV. DELAROSA'S ARGUMENTS CONTENDING THAT THE RECORD IS CLEAR REGARDING HOW THE TRIAL COURT GRANTED DELAROSA A NEW TRIAL – AND HAD INTENDED TO DO SO – HAVE RAISED ADDITIONAL ISSUES PERTAINING TO THE NATURE OF DELAROSA'S SOLE CLAIM AND WHAT AN ACTUAL RULING IN DELAROSA'S FAVOR WOULD HAVE REQUIRED OF THE TRIAL COURT.*

*V. IN LIGHT OF THE SUBSEQUENT ACTIONS OF THE TRIAL COURT THAT ARE INCONSISTENT WITH WHAT WOULD BE REQUIRED HAD THE TRIAL COURT RULED IN DELAROSA'S FAVOR, THE SUBSEQUENT ACTIONS OF THE TRIAL COURT PROVIDE MORE GROUNDS FOR A CONCLUSION BY THIS COURT MANDATING USE OF THE ABATEMENT PROCESS.*

Delarosa's Response Brief states, "The appellant will not address the issues regarding the alleged irregularities in the new trial held on December 17, 2014. That proceeding is not before this court except as a reason for dismissing the previously granted petition for discretionary review."[11] As the State's Response To Delarosa's Dismissal Motion, the State's Jurisdictional Brief, and the State's Opening Merit Brief all either noted or alluded to, a discrepancy exists in the plea documents related to the

_____

[11]*See* Delarosa's Response Brief, at p. 12.

11

"judgment" of December 17, 2014 and that discrepancy pertains to the dates when the parties affixed their signatures thereto and the date when the trial court affixed its signature thereto.[12]   Since the plea documents are contained in the supplemental Clerk's Record, the record before this Court now shows that the parties signatures were affixed on December 10, 2014, but the trial court's signature was affixed on December 17, 2014.  (CR-S: 16).  This discrepancy – along with the undisputed fact that the "judgment" of December 17, 2014 was entered while this Court's exclusive jurisdiction had been invoked – destroy any potential applicability of the presumption of regularity.  *See, e.g.*, Schneider v. State, 594 S.W.2d 415, 418 (Tex. Crim. App. [Panel Op.]  1980).  Finally, the record contains no docket sheet that reflects that any plea bargain was ever consummated and accepted by the trial court.  (CR-O: 1-75; CR-S: 1-24).

In light of the aforementioned matters, Delarosa's attempts to ignore matters related to the "judgment" of December 17, 2014 are completely understandable. Moreover, consideration of the "judgment" of December 17, 2014 in light of relevant portions of this Court's jurisprudence leads to the conclusion that the "judgment" of December 17, 2014 and the trial court's actions in regard to the case actually provide

---

[12]*See* State's Response To Delarosa's Dismissal Motion, at pp. 13-15; State's Jurisdictional Brief, at pp. 6-7; State's Opening Merit Brief, at pp. 7, 20-21 n.12.

more support for the State's position that the abatement process should be used to make certain that the record reflects the truth regarding what the trial court ruled and when and whether Delarosa's appeal should have proceeded from the original judgment of conviction that was entered in July 2014.

As the State noted in its response to Delarosa's motion to dismiss and in the State's Jurisdictional Brief, the "judgment" of December 17, 2014 makes clear on its face that it was entered on a date when only this Court had jurisdiction over the case because of the State's having timely filed the State's petition for discretionary review in regard to the Fifth Court's judgment and the pendency thereof as of the date of December 17, 2014.[13] Accordingly, the "judgment" of December 17, 2014 facially reflects that it was entered at a time when the trial court had no jurisdiction to dispose of the case because this Court's sole and exclusive jurisdiction had already been invoked and was still pending.[14]   Furthermore, consideration of the content of

_____

[13]*See* State's Response To Delarosa's Dismissal Motion, at pp. 4-11; State's Jurisdictional Brief, at pp. 1-23.

[14]Delarosa's Jurisdictional Brief argued that the trial court had jurisdiction under the Texas Rules of Appellate Procedure because the trial court had granted Delarosa's motion for new trial. *See* Delarosa's Jurisdictional Brief, at pp. 1-11.  In light of how the State's Jurisdictional Brief expressly argued that a conclusion contrary to the State's position herein would constitute granting trial courts the ability to deprive this Court of its already-invoked jurisdiction at a time when this Court was still deciding whether to review the judgment of a court of appeals, Delarosa's Jurisdictional Brief not only actually demonstrates the outcome predicted by the State, but also constitutes an effort to benefit from depriving this Court of its already-invoked jurisdiction before this Court had even determined – and expressed its opinion regarding – whether the Fifth Court's judgment should or should not be reviewed.  *See* State's Jurisdictional Brief, at pp. 16-20.

13

Delarosa's motion for new trial and what would have been required by law had the trial court meant to grant Delarosa's motion for new trial provide even more support for this Court to conclude that use of the abatement process is required in the instant case.

Delarosa's motion for new trial asserted that a new trial was merited for one reason and for one reason only, that the verdict was contrary to the law and evidence. (CR: 64). Under this Court's binding precedents, Delarosa's motion for new trial – by having claimed only that the verdict was contrary to the law and evidence – made only a claim of insufficiency of the evidence. *See* State v. Zalman, 400 S.W.3d 590, 594 (Tex. Crim. App. 2013), *citing* (among others): Gonzales v. State, 689 S.W.2d 900 (Tex. Crim. App. 1985) and Bogan v. State, 180 S.W. 247, 248 (Tex. Crim. App. 1915). Additionally, this Court's binding precedent establishes that Texas trial courts do have the authority "to order new trials for evidentiary sufficiency in criminal cases." State v. Savage, 933 S.W.2d 497, 499 (Tex. Crim. App. 1996). However, when a trial court does grant a motion for new trial for evidentiary insufficiency after a jury has already returned a guilty verdict, "double jeopardy prevents the trial court from entering any other judgment than an acquittal." Savage, 933 S.W.2d at 499.

If the trial court granted Delarosa's motion for new trial, the trial court – in order to have done so properly – would have to had done so based on the sole claim that had been alleged therein – insufficiency of the evidence. Had the trial court granted

14

Delarosa's motion for new trial for some grounds other than the sole ground Delarosa had alleged therein, that would be inconsistent with – if not violative of – the limitations this Court has placed on the discretion any trial court has relative to ruling on any motion for new trial.[15] *See* <u>State v. Herndon</u>, 215 S.W.3d 901, 907 (Tex. Crim. App. 2007). Since the trial court could only have properly granted Delarosa's motion for new trial on grounds of insufficiency of the evidence, the trial court would have been required to enter a judgment of acquittal (assuming *arguendo* that the trial court meant for the file-stamped order of August 2014 to indicate that Delarosa's motion for new trial had been granted). *See* <u>Savage</u>, 933 S.W.2d at 499.

The record is undisputed, however, that the trial court never entered any judgment of acquittal, which supports the conclusion that no motion for new trial was granted (or was not granted properly or on the sole ground alleged in Delarosa's motion for new trial). In regard to this point, Delarosa has not even claimed that the trial court ever intended to grant a judgment of acquittal in Delarosa's favor. Moreover, the

---

[15]Since the record contains nothing to indicate that any hearing was ever conducted regarding Delarosa's motion for new trial and since Delarosa's combination motion and order contains no language indicating that the District Clerk was ever directed to serve the parties with copies of the signed order with a file-stamp date of August 6, 2014, the instant case actually presents the question of whether trial courts should be permitted to grant motions for new trial for evidentiary sufficiency without holding a hearing thereon and/or without directly ordering that the clerk of the court serve the parties with copies of any issued orders that grant new trials based on insufficiency of the evidence (especially in those instances where – like here – a jury has already determined that the defendant was guilty beyond a reasonable doubt).

"judgment" of December 17, 2014 shows that the trial court sought to assume jurisdiction over the case again, but not for any purpose of making clear that the trial court had previously found the evidence insufficient. Accordingly, the trial court's own conduct fails to support the conclusion that the trial court granted Delarosa's motion for new trial in accordance with the law because the trial court – in order to have properly granted Delarosa a new trial in accordance with the law – would have had to have entered a judgment of acquittal.[16] *See* Savage, 933 S.W.2d at 499.

Since the very existence of the "judgment" of December 17, 2014 and the trial court's treatment of the case are entirely inconsistent with any conclusion that the trial court properly granted Delarosa's motion for new trial in August 2014 on the sole, evidentiary sufficiency grounds Delarosa had asserted in his motion for new trial, the

---

[16]If the trial court actually agreed with Delarosa's new-trial claim of evidentiary insufficiency, but merely granted Delarosa a new trial without entering a judgment of acquittal, the trial court may very well have entered a void order by merely granting Delarosa a new trial. A trial court's ruling or judgment can be rendered void as a result of certain non-jurisdictional errors that pertain to a trial court's lack of authority to act in a particular manner. *See, e.g.,* State v. Morales, No. 05-12-01297-CR, 2013 Tex. App. LEXIS 13047, at *14-15 n.4 (Tex. App. – Dallas October 17, 2013, no pet.)(not designated for publication), *citing* Ex Parte Seidel, 39 S.W.3d 221, 224 (Tex. Crim. App. 2001). If the trial court truly was ruling that the evidence was insufficient, the trial court – according to Savage – only had the authority to enter a judgment of acquittal, such that – according to Ex Parte Seidel – any ruling merely granting a motion for new trial was void from the moment the trial court entered it. *See* Ex Parte Seidel, 39 S.W.3d at 224; Savage, 933 S.W.2d at 499. Again, whether a trial court should have the authority to override the verdict of a jury and declare the evidence insufficient without even holding a hearing to announce such a ruling and/or without directing the court clerk to provide copies of the trial court's ruling directly to the parties is yet another important question that is embedded in the instant case. Finally, it cannot be stated enough that the meaning and basis of the trial court's interlineation could have been clarified long ago if the Fifth Court had merely made use of the abatement process as the State had requested.

16

very existence of the "judgment" of December 17, 2014 and the trial court's treatment of the case provide further proof in support of the State's position and reasons why the abatement process should be used to determine as best as possible what actually transpired in the trial court. As such, the claims in Delarosa's Response Brief include matters that actually provide further support for this Court to reach a conclusion mandating that the abatement process be used in the instant case.

## CONCLUSION AND PRAYER

In accord with and based on all the legal authority cited by the State in both the State's Opening Merit Brief and the instant State's Reply Brief, the Fifth Court clearly erred by dismissing Delarosa's appeal for want of jurisdiction without first having made use of the abatement process to make an accurate determination of whether the Fifth Court did or did not have jurisdiction. Accordingly, the State reiterates the prayer that this Court will vacate the Fifth Court's judgment through the issuance of an opinion that makes clear that the Fifth Court should have not only addressed the issues raised by the State and necessary to the appeal's disposition regarding whether the record contained any inaccuracies that had prevented the proper presentation of the case to the Fifth Court, but also that the Fifth Court should have made use of the abatement process to ascertain whether the Fifth Court did or did not have jurisdiction.

For all the aforementioned reasons and based on all the legal authority cited in conjunction therewith, the State again prays that the erroneous judgment of the Fifth Court in this case will be vacated or reversed and that the Fifth Court will be directed to make use of the abatement process to develop a record that makes clear what actually occurred in the trial court and when such occurrences transpired.

Respectfully submitted,

SUSAN HAWK
Criminal District Attorney

18

Dallas County, Texas


*Michael R. Casillas*
_____
MICHAEL R. CASILLAS, Assistant
Criminal District Attorney,
Appellate Division
133 N. Riverfront Blvd., LB 19
Dallas, Texas 75207-4399
(214) 653-3600/FAX (214) 653-3643
State Bar No. 03967500
Michael.Casillas@dallascounty.org
Mcasillas@dallascounty.org


## CERTIFICATE/PROOF OF SERVICE

I hereby certify that – no later than April 6, 2015 – a true, electronically-formatted copy of the instant State's Reply Brief has been served on opposing counsel, the Hon. Leslie McFarlane, and has also been served on the State's Prosecuting Attorney, the Hon. Lisa McMinn, by use of the electronic service function that accompanies the State's filing of the instant State's Reply Brief with this Court through the electronic filing service provider to which the State subscribes.


*Michael R. Casillas*
_____
MICHAEL R. CASILLAS

19

# CERTIFICATE OF COMPLIANCE

By affixing my signature below, I hereby certify – based on the word count function of the word-processing software program that was used in connection with the preparation of the instant State's Reply Brief – that the entirety of the body of the instant State's Reply Brief is comprised of 4,108 words. Additionally, I hereby certify that the relevant portions of the instant State's Reply Brief – as defined by Tex. R. App. P. 9.4(i)(1) – are comprised of 3,099 words. Accordingly, I also hereby certify that the number of words in the instant State's Reply Brief is in no way in excess of the 7,500-word limit specified in Tex. R. App. P. 9.4(i)(2)(C).

*Michael R. Casillas*

_____

MICHAEL R. CASILLAS